UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENNETH F. WITTNEBEN | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00174 |
| | § | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | § § § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Kenneth F. Wittneben ("Wittneben") seeks judicial review of an administrative decision denying his disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 11. Before the Court are competing motions for summary judgment filed by Wittneben and Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkts. 15 and 17. Having considered the motions, responsive briefing, record, and applicable law, the Court RECOMMENDS that Plaintiff, Kenneth Wittneben's Motion for Summary Judgment (Dkt. 15) be GRANTED; Defendant's Cross Motion for Summary Judgment (Dkt. 17) be DENIED; and the decision of the Administrative Law Judge ("ALJ") be REVERSED and REMANDED.

## BACKGROUND

Wittneben filed a claim for social security disability benefits under Title II of the Act alleging disability as of September 1, 2010. Wittneben's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Wittneben was not disabled. Wittneben filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Under the Act, individuals who have contributed to the program and have a physical or mental disability may apply for disability insurance benefits. *See* 42 U.S.C. § 423. The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Garcia v. Berryhill*, 800 F.3d 700, 704 (5th Cir. 2018). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987) (citation omitted). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "Procedural perfection in administrative proceedings, however, is not required." *Jones v.*

*Colvin*, 638 F. App'x 300, 303 (5th Cir. 2016) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)) (internal quotation marks omitted).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, emphasis, and citation omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond*, 892 F.3d at 817 (citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ('RFC'). The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record. The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754 (internal quotation marks and citations omitted).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *See Newton*, 209 F.3d at 455. *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332

3

U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

### THE ALJ'S DECISION

The ALJ found at step one that Wittneben had not engaged in substantial gainful activity since September 1, 2010.

The ALJ found at step two that Wittneben had the following severe impairment: obesity.

At step three, the ALJ found that this impairment did not meet any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Wittneben's RFC, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

Dkt. 9-3 at 18. At step four, based on this RFC, the ALJ found that Wittneben is unable to perform any past relevant work. At step five, the ALJ considered Wittneben's age, education, work experience, and RFC in conjunction with the Medical Vocational Guidelines and the testimony of a vocational expert to determine if there was any other work he could perform. At the time of the ALJ's hearing, Wittneben was 60 years old, defined as an individual of advanced age, with at least a high school education. The ALJ

4

determined that transferability of job skills was not material in the determination of disability. The ALJ concluded that "[t]he claimant was not under a disability, as defined in the Social Security Act, at any time from September 1, 2010, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g))." *Id.* at 22.

## DISCUSSION

This appeal raises two issues: (1) whether the ALJ erred at step 2 when he found Wittneben's dementia and Alzheimer's disease diagnoses were not medically determinable impairments; and (2) whether the ALJ failed to fulfill his duty to develop the record when he did not order neuropsychological testing despite the recommendation of two medical experts. The Court will address each issue in turn.

**A.   ALJ'S STEP TWO ANALYSIS**

**1.   Medically Determinable Mental Impairment**

Wittneben argues that the ALJ erred at step two "in finding that dementia and/or Alzheimer's disease are not 'medically determinable impairments' based on a purposed 'lack of objective evidence' in the record." Dkt. 16 at 5. The Commissioner responds that "[s]ubstantial evidence demonstrates that Plaintiff's dementia and Alzheimer's disease were not medically determinable impairments, even if Plaintiff did have medically determinable mental impairments, they were not severe." Dkt. 17-1 at 6.

**Legal Standard:** The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than 12 months." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (citing 42 U.S.C. § 416(i)(1)). "A medically determinable 'physical or mental impairment'

is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Maharajh v. Barnhart*, 424 F. Supp. 2d 915, 924 (S.D. Tex. 2006) (citing *Hames*, 707 F.2d at 165 and 42 U.S.C. § 423(d)(3)). "[A]n individual is under a disability, only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting 42 U.S.C. § 423(d)(2)(A)) (internal quotation marks omitted).

"Medically acceptable evidence includes observations made by the physician during physical examinations and is not limited to the narrow strictures of laboratory findings or test results." *Cruz v. Colvin*, No. EP-12-CV-00179-ATB, 2013 WL 3338591, at *6 (W.D. Tex. July 1, 2013) (citing *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). When evaluating the severity of a claimant's mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. *See Cruz*, 2013 WL 3338591, at *6 (citing *Boyd*, 239 F.3d at 705).

**ALJ's Determination:** In his opinion, the ALJ first addressed Wittneben's depression/dysthymia and found it was a medically determinable impairment but "caused no more than 'mild' limitation in any of the functional areas [and is] nonsevere." Dkt. 9-3 at 16. Wittneben does not challenge the ALJ's determination for this particular mental impairment. Next, the ALJ discussed Wittneben's other mental impairments. The ALJ concluded:

> After a careful review of the evidence of record, the claimant's dementia and Alzheimer's disease are not medically determinable impairments. Although the claimant was diagnosed with these impairments, they do not result from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Therefore, the undersigned finds dementia and Alzheimer's disease are not medically determinable impairments due to a lack of objective evidence. A medically determinable impairment may not be established solely on the basis of symptoms alone, or on the claimant's allegations regarding symptomatology (20 CFR 404.1508 and 416.908, and SSR 96-4p). There must be evidence from an acceptable medical source in order to establish the existence of a medically determinable impairment.

Dkt. 9-3 at 17. Because the ALJ determined that Wittneben's dementia and Alzheimer's disease were not medically determinable impairments, the ALJ did not evaluate the severity those particular mental impairments.

**The ALJ Erred in Finding That Wittneben's Dementia and Alzheimer's Disease Are Not Medically Determinable Impairments:** Substantial evidence does not support the ALJ's determination that Wittneben's dementia and Alzheimer's disease are not medically determinable impairments. The ALJ claims that although Wittneben was diagnosed with both dementia and Alzheimer's disease, "they do not result from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Dkt. 9-3 at 17. In support of this assertion, the ALJ relies solely on the testimony of a single consultative examiner, Ashock Khushalani, M.D. ("Dr. Khushalani"). At the hearing, Dr. Khushalani gave the following opinion regarding Wittneben's dementia:

> This is more an observational diagnosis. There is really no objective. Before you diagnose somebody with dementia, you have to have some MRI of the brain, x-ray to show any kind of impact on the brain, if there's any shrinkage. There is no neuropsychological testing. There's not even what's known as a

> mini-mental status or other type. There is one slump score of 19 and that says dementia. But there are various other parameters.

*Id.* at 54. The ALJ categorically states: "[t]he undersigned notes the objective medical evidence support[s] the testimony of Dr. Khushalani." *Id.* at 17. The ALJ and Dr. Khushalani are both mistaken.

A review of the objective medical evidence indicates that not only was Wittneben diagnosed with mild cognitive impairment, but a brain MRI was performed and a mini-mental status exam was administered in April 2014 at the Houston Neurological Institute. The April 2014 brain MRI appears at least twice in the medical record. First, Wittneben submitted the actual brain MRI results. *See* Dkt. 9-16 at 70. Second, in a progress note from Robert Fayle, M.D. ("Dr. Fayle), he stated that he "[d]iscussed the psychometrics and the MRI" with Wittneben on May 16, 2014. Dkt. 9-11 at 41. Although these medical records were available to Dr. Khushalani and the ALJ, it is clear from the hearing transcript and the ALJ's opinion that neither Dr. Khushalani nor the ALJ reviewed this objective medical evidence.

Moreover, the ALJ only briefly discussed Wittneben's prescription for Aricept. According to testifying medical expert Philip Sidney Bentlif, M.D. ("Dr. Bentlif"), Aricept is a medication that is "used in the early stages of [Alzheimer's disease] in hopes of stopping progression of the process." Dkt. 9-3 at 52. Here, the ALJ states "the claimant had only mild cognitive impairment with improved memory subsequent to starting Aricept 5 mg (Exhibit 5F, page 2)." Dkt. 9-3 at 17. After diagnosing Wittneben with mild cognitive impairment, Dr. Fayle prescribed Aricept. While it is true that the medical record indicates that Wittneben reported some memory improvements after taking Aricept, this

8

does not mean that Wittneben does not suffer from Alzheimer's disease or dementia. Simply because Wittneben was responding to the medication does not necessarily mean his memory loss was controlled. In fact, in a January 2015 progress note, Dr. Fayle stated that "[d]espite the Aricept 10 mg/day, the memory has continued to get worse according to the patient. He is trying to get a medical disability, which is appropriate. We have discussed [his] expectations with the Aricept." Dkt. 9-14 at 65. The medical record indicates that not only was Wittneben's prescription for Aricept increased from 5 mg per day to 10 mg per day, but that Wittneben continued to experience memory loss.

The ALJ did not find that Wittneben's allegations of dementia and Alzheimer's disease were medically determinable impairments. It is clear from a review of the record that Wittneben exhibited signs, symptoms, and objective reports of memory loss that can establish the existence of a medically determinable impairment. "While an ALJ is not required to cite all of the evidence in the record he considered, his decision will only be upheld if it is supported by substantial evidence." *Cruz*, 2013 WL 3338591, at *9 (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)). Furthermore, an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393. Here, the ALJ disregarded critical objective medical evidence while relying on the testimony of Dr. Khushalani, who also disregarded the same objective medical evidence. This casts serious doubt on the ALJ's review of the record. As such, the Court holds that the ALJ's finding that Wittneben's dementia and

Alzheimer's disease are not medically determinable impairments is not supported by substantial evidence and that the ALJ's finding was in error.[1]

B.  **DUTY TO FULLY AND FAIRLY DEVELOP THE RECORD**

Next, Wittneben contends that the ALJ should have ordered a neuropsychological evaluation. He argues that the ALJ failed to fully and fairly develop the record because "two testifying medical experts recommended that Plaintiff undergo a neuropsychological evaluation to determine if he does, in fact, have dementia." Dkt. 16 at 13. Wittneben argues that he was prejudiced by this failure to consult another medical expert. In response, the Commissioner asserts that the testifying medical experts' opinions "support the ALJ's finding that Plaintiff's dementia and Alzheimer's disease were not medically determinable impairments." Dkt. 17-1 at 14.

**Legal Standard:** "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision." *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). "So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Id*. (citing 20 C.F.R. §§ 404.1516, 416.916; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989)). While the claimant bears the burden of proving his disability by establishing a physical or

---

[1] In her motion, the Commissioner argues that "[e]ven if the ALJ erred here by stating that dementia and Alzheimer's disease were not medically determinable impairments (Tr. 16), the ALJ discussed substantial objective evidence, in detail, supporting his finding that Plaintiff did not have a severe mental impairment (Tr. 15)." Dkt. 17-1 at 7. The Court declines to consider this *post hoc* rationalization. *See SEC v. Chenery Corp.*, 332 U.S. at 196. As explained above, the ALJ never evaluated the severity of Wittneben's dementia and Alzheimer's conditions. The Court will not do so in the first instance on appeal.

10

mental impairment, the ALJ may order a consultative examination to develop a full and fair record. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). "The decision to order a consultative examination is within the ALJ's discretion, but the ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the determination." *Cruz*, 2013 WL 3338591, at *9. "A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Brock*, 84 F.3d at 728 (citation omitted).

**The ALJ Must Order a Consultative Examination:** While the Court has already determined that the medical records contain enough information to indicate that Wittneben's dementia and Alzheimer's disease are medically determinable impairments, the ALJ made no determination about the severity of these impairments. At the hearing before the ALJ, both testifying medical experts recommended that Wittneben undergo a neuropsychological evaluation. In his opinion, the ALJ notes that Wittneben's attorney requested a consultative neuropsychiatric evaluation but decided "there is no reason to delay this claim for any further evaluation" and denied the request. Dkt. 9-3 at 11. The Court finds that an evaluation is necessary to enable the ALJ to make the determination on the severity of Wittneben's dementia and Alzheimer's disease. *See Cruz*, 2013 WL 3338591, at *9. Accordingly, on remand, the ALJ should order a consultative neuropsychological evaluation to fully and fairly develop the record and clear up any ambiguities in the record.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Plaintiff, Kenneth Wittneben's Motion for Summary Judgment (Dkt. 15) be GRANTED; Defendant's Cross

Motion for Summary Judgment (Dkt. 17) be DENIED; and the decision of the Administrative Law Judge ("ALJ") be REVERSED and REMANDED. On remand, the ALJ should order a consultative neuropsychological evaluation and consider the full record.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 12th day of March, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE